**RECEIVED**

APR 1 3 2016

U.S. District Court
Eastern District of MO

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| Paul Berry III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JASON KANDER, Missouri Secretary | ) |
| of State, in his official capacity, | ) |
| | ) |
| Serve at: | ) |
| Office of the Secretary of State | ) |
| State Capitol, Room 208 | ) |
| Jefferson City, MO 65101 | ) |
| | ) |
| and | ) |
| | ) |
| CHRIS KOSTER, Missouri Attorney | ) |
| General, in his official capacity, | ) |
| | ) |
| Serve at: | ) |
| Office of the Attorney General | ) |
| Supreme Court Building | ) |
| 207 W. High St. | ) |
| Jefferson City, MO 65102 | ) |
| | ) |
| Defendant. | ) |

Case Number:_____

**Three-Judge Court Requested**

---

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, DECLARATORY JUDGMENT AND PERMANENT INJUNCTION

COME NOW Plaintiff Paul Berry III, and for his complaint against each

Defendant, state and allege as follows:

## COMPLAINT

1

1.     This is an action against the State of Missouri challenging the lawfulness

and constitutionality of the current Missouri Congressional District Map, which violates

Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and the First,

Fourteenth, and Fifteenth Amendments to the Constitution of the United States of

America.

2.     The State of Missouri unnecessarily, unlawfully and unconstitutionally

utilized race as a factor in the construction of Missouri Congressional District One

congressional boundaries, which caused an unconstitutional "tsunami" effect upon

Missouri Congressional District Two maintaining boundaries that are "compact as may

be", which is a violation of Mo. Const. art. Ill, 45.

3.     The congressional district boundaries of Missouri Congressional District

Two unnecessarily, unlawfully and unconstitutionally deny St. Louis County citizens

from voter "ballot-box" influence upon the congressional district that represents the

economic engine of St. Louis County, in favor of representing a similar Saint Charles

County and Jefferson County citizen population redistricted in a "non-compact" manner,

in violation of Mo. Const. art. Ill, 45.

4.     The congressional district boundaries of Missouri Congressional District

Two unnecessarily, unlawfully and unconstitutionally divide Saint Charles County into

two separate Missouri congressional Districts, diluting voter "ballot-box" influence upon

the Missouri Congressional District that represents the majority of Saint Charles County

citizens.

2

5.      The congressional district boundaries of Missouri Congressional District Two unnecessarily, unlawfully and unconstitutionally divide Saint Charles County cities into two separate Missouri Congressional Districts, diluting voter "ballot-box" influence upon the Missouri congressional district that represents the majority of Saint Charles County citizens.

6.      The congressional district boundaries of Missouri Congressional District Two unnecessarily, unlawfully and unconstitutionally divide Jefferson County into three separate Missouri congressional Districts, diluting voter "ballot-box" influence upon the Missouri congressional district that represents the majority of Jefferson County citizens.

7.      The congressional district boundaries of Missouri Congressional District Two unnecessarily, unlawfully and unconstitutionally isolate virtually the entire St. Louis County African American citizen bloc from voter "ballot-box" influence upon the congressional district that represents the majority of Saint Louis County citizens and the economic engine of St. Louis County, in favor of representing a similar Saint Charles County and Jefferson County non-African American citizen population redistricted in a "non-compact" manner, in violating of the Section 2, of the Voter Rights Act of 1965.

## PARTIES

8.      Plaintiff Paul Berry III is a United States citizen and a duly registered voter of the State of Missouri.  Paul Berry III is a St. Louis County resident and currently resides within the current boundaries of Missouri Congressional District Two.  As defined by the criteria maintained by the United States Census Bureau, Paul Berry III is

3

a member of the African American race.  Paul Berry III is a Republican congressional candidate for Missouri Congressional District One seat.

9.      Defendant Jason Kander is the Secretary of State of Missouri and is sued in his official capacity.  Missouri Secretary of State Jason Kinder is a proper party in that he is the chief election official of the State of Missouri and, in that capacity, presides over elections to public office in Missouri, including elections of Missouri's representatives to the United States House of Representatives.

10.      Defendant Chris Koster is the Attorney General of Missouri and is sued in his official capacity.  Missouri Attorney General Chris Koster is a proper party in that this action involves allegations that the redistricting Map as drawn and adopted by the General Assembly is unconstitutional under the Missouri Constitution.  Mo. Sup. Ct. R. 87.04 provides that, in such instances, the Attorney General of Missouri shall "be served with a copy of the proceeding and be entitled to be heard."

## JURDICTION AND VENUE

11.      This complaint seeks redress to violations committed by the State of Missouri, in violation of the Fourteenth Amendment of the United States Constitution, the Voter Rights Act of 1965 and the Declaratory Judgment Act.

12.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1357, and 1367.

13.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and 1988.

4

14.     This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

15.     Venue for the Plaintiff's complaint is proper pursuant to 28 U.S.C 1391 (b).

16.     Venue for the Plaintiff's complaint is proper due to the Plaintiff residing within the Eastern District of Missouri.

17.     Venue for the Plaintiff's complaint is proper due to the boundaries of Saint Louis County and the City of Saint Louis being wholly encompassed within the Eastern District of Missouri.

18.     Venue for the Plaintiff's complaint is proper due to the boundaries of Missouri Congressional District One and Missouri Congressional District Two being wholly encompassed within the Eastern District of Missouri.

19.     The Plaintiff respectfully request this Court appoint and impanel a three-judge District Court pursuant to 28 U.S.C 2284(a) to adjudicate the Plaintiff's complaint. The Plaintiff's complaint challenges the constitutionally of the State of Missouri's appointment of congressional districts.

20.     The Defendants do not maintain immunity from the Plaintiff's complaint under the Eleventh Amendment of the United States Constitution because of the direct role and statutory authority each Defendant participated or enjoys related to establishing the unconstitutional congressional boundaries in question, specifically the State of Missouri's direct role in Federal congressional election proceedings during the 2016 election cycle.

21.     The Plaintiff challenges the constitutionality of Missouri Congressional District One and Missouri Congressional District Two being established as racially gerrymandered congressional districts, in violation of the Equal Protection Cause of the Fourteenth Amendment of the United States Constitution.

22.     The Plaintiff challenges the constitutionality of current Missouri Congressional District One, Missouri Congressional District Two and Missouri Congressional District Three boundaries NOT being established as "compact as may be", in violation of Mo. Const. art. III, 45.

23.     The Plaintiff challenges the constitutionality of Missouri Congressional District One and Missouri Congressional District Two boundaries as a racial gerrymander, in conflict or in violation of the Voter Rights Act of 1965.

## FACTUAL ALLEGATIONS RELEVEANT TO ALL COUNTS

24.     In February 2011, the United States Census Bureau released the results of the 2010 Census, which established Missouri's population grew at a lower rate than the national average.  As a result, Missouri was required to reduce the number of United States House of Representatives from nine congressional districts to eight congressional districts.

25.     Mo. Const. art. III, 45, mandates "the general assembly shall by law divide the state into districts corresponding with the number of Representatives to which it is entitled, which districts shall be composed of contiguous territory as compact and as nearly equal in population as may be."  Based upon Missouri being required to reduce

6

the number of United States House of Representatives from nine congressmen to eight congressmen, the Missouri General Assembly was tasked by Mo. Const. art. III, 45, to substantially redraw new congressional districts for the 2012 and future election cycles.

26.     The Supreme Court of Missouri outlined in Pearson v. Koster, 359 SW 3d 35 – MO Supreme Court 2012 (En Banc), the State's legal requirements when executing congressional redistricting, which states: "Article III, section 45 of the Missouri Constitution sets out only three requirements for the redistricting of seats in Missouri for the United States House of Representatives. The districts "shall" be composed of "contiguous territory as compact and as nearly equal in population as may be." Mo. Const. art. III, sec. 45. The purpose of these requirements is "to guard, as far as practicable, under the system of representation adopted, against a legislative evil, commonly known as `gerrymander,' and to require the Legislature to form districts, not only of contiguous, but of compact or closely united, territory." *State ex rel. Barrett v. Hitchcock,* 241 Mo. 433, 146 S.W. 40, 61 (1912). "[T]he provision requiring compactness of territory, subject, as it must be, to other more definitely expressed rules, may also, in application, be modified by the requirement of equality in population ... that `compactness, being of less importance, may, to some extent, yield in aid of securing a nearer approach to equality of representation.'" *Id.* at 61 (internal citations omitted)."

27.     During February and March 2011, the Senate and House redistricting committees each held hearings to create a new Missouri congressional boundary map.

7

28.    The current version of Missouri Congressional District Map has the effect of establishing a "partisan gerrymander." The partisan gerrymander established by the current version of Missouri Congressional District Map effectively established two Democrat and six Republican "safe" congressional districts, without any real potential competitive threat from the opposing political party. The current version of Missouri Congressional District Map was titled "the Grand Compromise" during the redistricting process.

29.    There is no record of utilizing political affiliation data upon the current Missouri Congressional District Map attached to the current Missouri Congressional District Map redistricting process within the archived records maintained by the Missouri Office of Administration, a Missouri state agency responsible for establishing demographic and statistical information for any Missouri congressional redistricting process.

30.    The Missouri Office of Administration is responsible for the coordination and preparation of all official population estimates and projections required by state agencies, commissions and local governmental units. The Missouri Office of Administration maintains a processing center for information from each federal census and serves as the responsible Missouri agency for federally sponsored programs and federal-state cooperative programs within the areas of demographic analysis.

31.    Current Missouri case law exists that supports the Missouri congressional redistricting process to consider political ramifications when establishing congressional

8

districts, although the letter and the spirit of Mo. Const. art. III, 45, does not specifically declare such.

32.    Mo. Const. art. III, 45, is the only Missouri constitutional amendment addressing Missouri's congressional redistricting process.

33.    Any Missouri congressional redistricting plan that wishes to consider political ramifications of establishing congressional redistricting boundaries, such consideration of political ramifications during congressional redistricting process must run subordinate to the Supremacy Clause of the United States Constitution, the Missouri Constitution, traditional congressional redistricting principles and Missouri law. Only after the aforementioned legal authorities have been properly applied to any congressional redistricting process, such as contiguousness, compactness or population equality, can the State of Missouri then consider any political ramifications related to such congressional redistricting process.

34.    Any political ramifications the State of Missouri seeks to implement when establishing congressional redistricting boundaries are not considered a "compelling state interest."

35.    Based upon each Senate and House redistricting committee utilizing race-based statistical evidence to establish current Missouri Congressional District One boundaries, the current congressional boundaries of Missouri Congressional District Two were created in a manner that ignored traditional redistricting principles, thus creating such current congressional boundaries NOT as "compact as may be."

36.     The Plaintiff attach as Exhibit A and incorporate herein the current

Missouri Congressional District Map authorized by the Missouri General Assembly

titled "Grand Compromise", which includes statistical analysis of the racial makeup of

each Missouri Congressional District incorporated within a map legend upon the actual

current Missouri Congressional District Map in question.  The Plaintiff attach as Exhibit

B and incorporate herein the county population split utilized by the Missouri General

Assembly to create the current Missouri Congressional District Map.

37.     The current boundaries of Missouri Congressional District Two incorporate

134,878 of 360,486 total Saint Charles County citizen population.

38.     Missouri Congressional District Three represents 225,607 Saint Charles

County citizens.

39.     The City of O'Fallon is the most populist city jurisdiction in Saint Charles

County, with an approximate population of 79,329 citizens.

40.     The City of Saint Charles is the second most populist city jurisdiction in

Saint Charles County, with an approximate population of 65,000 citizens.

41.     The City of Saint Charles serves as the county seat to Saint Charles

County.

42.      The City of Saint Peters is the third most populist city jurisdiction in Saint

Charles County, with an approximate population of 52,000 citizens.

43.     The City of O'Fallon, the City of Saint Charles, the City of Saint Peters

10

each serve as an economic engine to Saint Charles County.

44.    The Saint Charles County citizens that are represented by the same Missouri city government are unnecessarily separated into two Missouri Congressional Districts, specifically Missouri Congressional District Two and Missouri Congressional District Three.

45.    The Saint Charles County citizens that reside within the current boundaries of Missouri Congressional District Two are unnecessarily isolated from congressional "ballot-box" voter influence upon Missouri Congressional District Three, the congressional district that represents a significant economic engine of Saint Charles County, specifically the City of Saint Charles, and parts of the City of Saint Peters and the City of O'Fallon.

46.    The current boundaries of Missouri Congressional District Two are not "composed of contiguous territory". The current boundaries of Missouri Congressional District Two include Saint Louis County and Saint Charles County, which are separated by the Missouri River.

47.    The current boundaries of Missouri Congressional District Two incorporate parts of Jefferson County, specifically the City of Arnold.

48.    Approximate Jefferson County citizen population is unnecessarily split into three separate Missouri Congressional Districts, Missouri Congressional District One, Missouri Congressional District Two and Missouri Congressional District Three, which

11

denies Jefferson County citizens the ability to have "ballot-box" influence commentate
to the size of Jefferson County's congressional voter bloc.

49.     The City of Arnold is the most populist city jurisdiction in Jefferson
County, with an approximate population of 20,000 citizens.

50.     The City of Arnold serves as an economic engine to Jefferson County.

51.     Approximately 176,000 Jefferson County citizens that do not reside within
the current boundaries of Missouri Congressional District Two are unnecessarily isolated
from congressional voter influence upon the congressional district that represents a
significant economic engine of Jefferson County, specifically the City of Arnold.

52.     Saint Louis County has an approximate population of one million citizens.
The current equal population divide for each Missouri congressional district is
approximately 750,000 citizens.  No Missouri Congressional District boundaries are
solely comprised of Saint Louis County citizens, including the current boundaries of
Missouri Congressional District Two.

53.     Based upon the current boundaries of Missouri Congressional District One
and Missouri Congressional District Two, 178,984 Saint Louis County citizens within
the congressional boundaries of Missouri Congressional District One are unnecessarily
isolated from congressional voter influence upon the congressional district (Missouri
Congressional District Two) that represents the majority of Saint Louis County residents
and the economic engine of Saint Louis County, in lieu of Missouri Congressional

District Two representing the exact sum amount of 178,984 Saint Charles County and Jefferson County citizens.

54.     Missouri public policy related to voter congressional redistricting outlined by Preisler v. Hearnes, 362 SW 2d 552 36 – MO Supreme Court 1962 (En Banc), and recently cited by the Missouri Supreme Court 50 years later in Pearson v. Koster, 367 SW 3d 36 – MO Supreme Court 2012 (En Banc), states: "[C]ounties are important governmental units, in which the people are accustomed to working together. Therefore, it has always been the policy of this state, in creating districts of more than one county (congressional, judicial or senatorial) to have them composed of entire counties.... We must hold that it was proper for the legislature to follow this policy. In fact, to do otherwise could lead to the most vicious kind of gerrymander. The only departure therefrom in the 1961 Act was in our two largest cities, St. Louis and Kansas City.... Urban conditions may justify this treatment."

55.     The current boundaries of Missouri Congressional District Two and Missouri Congressional District Three are NOT as "compact as may be," in respect to citizens residing in the same county jurisdiction being represented by the same congressional representative when such may be reasonably achieved.

56.     Even if any alleged compelling state interest existed to justify establishing current Missouri Congressional District Two congressional boundaries that are NOT as "compact as may be", current Missouri Congressional District Two boundaries

13

established by the General Assembly were not narrowly tailored to achieve such alleged compelling state interest. There are several other viable and constitutionally permissible alternatives to the current Missouri Congressional District Two boundaries.

57. The current boundaries of Missouri Congressional District Two and Missouri Congressional District Three egregiously violate the "one-man, one-vote" Federal voter suffrage doctrine.

58. Upon information and belief, each Senate and House redistricting committee utilized race-based statistical evidence to establish current Missouri Congressional District One and Missouri Congressional District Two boundaries.

59. The Plaintiff attach as Exhibit C and incorporate herein various other maps and statistical analysis worksheets that utilized the racial makeup of each congressional district attached to the redistricting process of the current Missouri Congressional District Map archived by the Missouri Office of Administration, in excess of the aforementioned archived documents.

60. Upon information and belief, no Senate and House redistricting committee hearing took any testimony or accepted any evidence that indicated the African American congressional voter bloc within the City of Saint Louis would have difficulty electing the congressional representation of such African American congressional voter bloc's choosing.

61. During the previous five congressional elections immediately prior to the authorization of the most recent Missouri Congressional District Map, the African

14

American congressional voter bloc within the City of Saint Louis had no difficulty or impediment electing the congressional representation of such African American congressional voter bloc's choosing.

62.     The Plaintiff attach as Exhibit E and incorporate herein Missouri Congressional District One election results for Missouri General Election 2002 thru 2010 maintained by the Missouri Secretary of State.

63.     The following statistical analysis of the congressional district that represented the majority of the African American congressional voter bloc within the City of Saint Louis, Missouri Congressional District One (as formed during 2002-2010 election cycles), clearly indicates Mr. Lacy Clay, an African American Congressman, won election and reelection of Missouri Congressional District One seat five consecutive times without difficulty or impediment to the African American congressional voter bloc within the City of Saint Louis, as follows:

        a.      During the 2010 Missouri General Election, the African American congressional voter bloc within the City of Saint Louis voted Congressman Clay to the Missouri Congressional District One seat with approximately 74% of the total congressional district vote, compared to Congressman Clay losing approximately 26% of congressional district vote to two other Missouri General Election congressional candidate opponents;

b. During the 2008 Missouri General Election, the African American congressional voter bloc within the City of Saint Louis voted Congressman Clay to the Missouri Congressional District One seat with approximately 87% of the total congressional district vote, compared to Congressman Clay losing 13% of congressional district vote to two other Missouri General Election congressional candidate opponents;

c. During the 2006 Missouri General Election, the African American congressional voter bloc within the City of Saint Louis voted Congressman Clay to the Missouri Congressional District One seat with approximately 73% of the total congressional district vote, compared to Congressman Clay losing 27% of congressional district vote to two other Missouri General Election congressional candidate opponents;

d. During the 2004 Missouri General Election, the African American congressional voter bloc within the City of Saint Louis voted Congressman Clay to the Missouri Congressional District One seat with approximately 75% of the total congressional district vote, compared to Congressman Clay losing approximately 25% of congressional district vote to three other Missouri General Election congressional candidate opponents; and

e. During the 2002 Missouri General Election, the African American congressional voter bloc within the City of Saint Louis voted Congressman Clay

to the Missouri Congressional District One seat with approximately 70% of the

total congressional district vote, compared to Congressman Clay losing

approximately 30% of congressional district vote to two other Missouri General

Election congressional candidate opponents.

64.     No evidence or statistical data exists that suggests the African American

congressional voter bloc within the City of Saint Louis enjoyed any difficulty electing

the congressional representation of such African American congressional voter bloc's

choosing.

65.     The facts and redistricting circumstances outlined within the Plaintiff's

petition closely mirror Bush v. Vera, 517 U.S. 952, 116 S. Ct. 1941, 135 L. Ed. 2d 248 –

U.S. Supreme Court 1996, which states: "State's interest in remedying discrimination is

compelling when two conditions are satisfied. First, the discrimination that the State

seeks to remedy must be specific, "identified discrimination"; second, the State "must

have had a 'strong basis in evidence' to conclude that remedial action was

necessary, *'before* it embarks on an affirmative action program.'" *Shaw II, ante,* at 910

(citations omitted). Here, the only current problem that appellants cite as in need of

remediation is alleged vote dilution as a consequence of racial bloc voting, the same

concern that underlies their VRA § 2 compliance defense, which we have assumed to be

valid for purposes of this opinion. We have indicated that such problems will not justify

race-based districting unless "the State employes] sound districting principles, and ... the

affected racial group's residential patterns afford the opportunity of creating districts in

17

which they will be in the majority." *Shaw I,* 509 U. S., at 657 (internal quotation marks omitted). Once that standard is applied, our agreement with the District Court's finding that these districts are not narrowly tailored to comply with § 2 forecloses this line of defense."

66.     The Plaintiff incorporates, by reference, the entire opinion of Bush v. Vera, 517 U.S. 952, 116 S. Ct. 1941, 135L. Ed. 2d 248 – U.S. Supreme Court 1996, as though fully set forth here.

67.     Upon information and belief, Senate and House redistricting committee hearings took no testimony or accepted any evidence that indicated specific, identified discrimination regarding the African American congressional voter bloc being required to regularly defend themselves against any non-African American congressional voter block within the City of Saint Louis seeking to utilize such non-African American congressional voter block within the City of Saint Louis to defeat the congressional candidate of such City of Saint Louis African American congressional voter bloc's choosing.

68.     The State of Missouri had no authority to implement or embark upon any affirmative action upon the current Missouri Congressional District Map because the State of Missouri was without a strong basis in evidence to conclude that remedial action was necessary, before it embarked on an affirmative action program, specifically establishing affirmative action in the form of creating Missouri Congressional District One as a racial gerrymander upon the current Missouri Congressional District Map.

69.     No archived records related to Missouri House and Senate congressional redistricting maps and plans identified specific discrimination regarding the African American congressional voter bloc being required to regularly defend themselves against any non-African American congressional voter block within the City of Saint Louis seeking to utilize such non-African American congressional voter block within the City of Saint Louis to defeat the congressional candidate of such City of Saint Louis African American congressional voter bloc's choosing.

70.     As Mo. Const. art. Ill, 45, is the only Missouri constitutional amendment that addresses Missouri's congressional redistricting process, and no other statute addresses Missouri's congressional redistricting process, the State of Missouri has no specific affirmative action policy related to addressing congressional redistricting to assure compliance with Section 2 of the Voting Rights Act of 1965.

71.     The United States Supreme Court declared in *Thornburg v. Gingles*, 478 U.S. 30, 106 S. Ct. 2752, 92 L. Ed. 2d 25 – U.S. Supreme Court 1986, to assert Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973(b), the White majority must regularly vote as a bloc to defeat minority-supported candidates.

72.     During the 2002-2010 election cycles, Congressman Lacy Clay won reelection of Missouri Congressional District One seat by an approximate average of 76%, while losing an approximate average of 24% of congressional district vote against at least two or more general election congressional candidate opponents each 2002-2010 congressional general election.

73.   The Missouri Congressional District One African American voter age population during the 2002-2010 election cycles was less than 50%.

74.   Congressman Lacy Clay average election victory percentage in excess of the Missouri Congressional District One African American voter age population during the 2002-2010 election cycles was at least 26% above the Missouri Congressional District One African American voter age population during the 2002-2010 election cycles.

75.   No evidence or statistical data exists that would have suggested the African American congressional voter bloc within the City of Saint Louis are regularly defending themselves against any White congressional voter block within the City of Saint Louis seeking to utilize such White congressional voter block to defeat the congressional candidate of the City of Saint Louis African American congressional voter bloc's choosing.

76.   The State of Missouri was not designated as a political redistricting "preclearance" state pursuant to the Voter Rights Act of 1965 during the temporal period of any previous Missouri congressional redistricting plan.

77.   The United States Supreme Court in *Shelby County, Ala v. Holder*, 133 S. Ct. 2612, 570 US 2, 186 L. Ed. 2d 651, held that the political redistricting "preclearance" requirements upon certain state and local jurisdictions required by the Voter Rights Act of 1965 have been effectively nullified until the United States Congress reauthorize Section 4(b) of the Voter Rights Act of 1965.

78.     Under current Federal and Missouri law, the State of Missouri may only utilize race-based redistricting of Missouri Congressional One or Missouri Congressional District Two voters in the matter authorized pursuant to the Voter Rights Act of 1965.

79.     Any voter suffrage scheme authorized by the State of Missouri that utilizes any race-based redistricting of Missouri Congressional One or Missouri Congressional District Two voters in excess of the matter authorized pursuant to the Voter Rights Act of 1965 requires a strict scrutiny analysis of such voter suffrage scheme authorized by the State of Missouri.

80.     Utilizing race-based redistricting of current Missouri Congressional One or Missouri Congressional District Two voters in excess of the authority established pursuant to the Voter Rights Act of 1965 is a violation of the Fourteenth Amendment of the United States Constitution.

81.     The General Assembly was without sufficient justification pursuant to the Voter Rights Act of 1965 to establish current Missouri Congressional District One boundaries based upon any factor related to any voter's race.

82.     A voting district is an unconstitutional racial gerrymander when a redistricting plan cannot be understood as anything other than an effort to separate voters into different districts on the basis of race, and that the separation lacks sufficient justification.

83.     Any plaintiff in a racial gerrymander suit adjudicated before Federal Court does not maintain any burden to show or prove that the election authorities establishing

congressional redistricting boundaries intended to discriminate during congressional redistricting process.

84.     The current boundaries of Missouri Congressional District One established by the State of Missouri are an unconstitutional racial gerrymander, which constitutes a violation of the Fourteenth Amendment of the United States Constitution.

85.     As a direct result of the State of Missouri establishing Missouri Congressional District One under racial gerrymander principles during previous congressional boundary redistricting plan, St. Louis County African-American voters were almost exclusively "packed" into current Missouri Congressional District One boundaries, which unconstitutionally dilutes and unnecessarily isolates virtually all of the St. Louis County African-American voter bloc from "ballot-box" influence upon Congressional District Two, which represents both the economic engine and a majority of all congressional voters of St. Louis County, Congressional District Two.

86.     The African America congressional voting bloc within St. Louis County is severely isolated from choosing the candidate of their choice upon the congressional representative that represents the majority of congressional voters within St. Louis County predominantly based upon the race of such African America congressional voting bloc within St. Louis County, and not predominantly based upon any constitutional or traditional congressional redistricting principle.

87.     Section 2(a) of the Voter Rights Act of 1965 prohibits the imposition of any electoral practice or procedure that "results in a denial or abridgement of the right of any citizen . . . to vote on account of race or color." 52 U.S.C. § 10301(a). A section 2 violation occurs when, based on the totality of circumstances, the political process results in minority "members hav[ing] less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." Id. § 10301(b).

88.     Despite Saint Louis County only maintaining a countywide 23% BVAP rate in 2002 and Saint Louis County having a total population approximately 33% greater than the total population of any Missouri Congressional District, the Saint Louis County African American voter bloc effectively elected an African American County Executive (countywide elected office) during the 2002, 2006 and 2010 Missouri general election cycles, which occurred upon the same election ballot and during the exact same temporal period all Missouri Congressional District Representatives were elected upon the previous congressional redistricting map.

89.     When unobstructed from unconstitutional racially gerrymandered congressional district boundaries, Saint Louis County African American voter bloc have effectively demonstrated the ability to elect the political officials of their choice during the exact temporal period the previous Missouri Congressional District Map was in effect.

90.     Former Missouri House Speaker John Diehl lead the Missouri congressional redistricting process that ultimately established the current Missouri Congressional District Map from map and data submissions presented by the Senate and House redistricting committee that was subsequently authorized by the Missouri General Assembly.

91.     In April 2011, the Missouri General Assembly adopted the current version of Missouri Congressional District Map.

92.     Following the Missouri General Assembly's adoption of the current version of Missouri Congressional District Map, Missouri Governor Jerimiah ("Jay") Nixon vetoed the current version of Missouri Congressional District Map.

93.     Following Missouri Governor Jay Nixon's veto of the Missouri General Assembly's adoption of the current version of Missouri Congressional District Map, the General Assembly voted to override the Missouri Governor's veto, effectively authorizing the current version of Missouri Congressional District Map.

94.     The voter age population of Missouri Congressional District One and Missouri Congressional District Two have been subjected to the unconstitutional boundaries established by "the Grand Compromise" for two consecutive congressional election cycles.

95.     Without appropriate relief from this Court, the voter age population of Missouri Congressional District One and Missouri Congressional District Two will be

subjected to the unconstitutional congressional boundaries established by "the Grand Compromise for three additional congressional election cycles.

96.     The current boundaries of Missouri Congressional District Two established by the State of Missouri are an unconstitutional racial gerrymander, which constitutes a violation of the Fourteenth Amendment of the United States Constitution.

97.     The current version of Missouri Congressional District Map is in violation of the Voter Rights Act of 1965 by essentially isolating the entire Saint Louis County African American congressional voter bloc from Missouri Congressional District Two, which currently represents the majority of Saint Louis County congressional voter bloc and significant congressional territory that consists of Saint Louis County's economic engine.

98.     The potential exists for this Court to draw a congressional redistricting map that will comply with the constitutional requirements and remedy the blatant abuse of the constitutional suffrage rights of hundreds of thousands of Missouri citizens, and this Court is wholly within its authority to do so.

99.     The Plaintiff provides a statistical illustration of drawing a Missouri congressional redistricting map that will comply with all Federal and Missouri constitutional requirements.  The Plaintiff attach as Exhibit E and incorporate herein the Plaintiff's county population worksheet utilized to draw the Plaintiff's suggested Missouri congressional redistricting map.

## PLAINTIFF'S SUGGESTED MISSOURI CONGRESSIONAL REDISTRICTING MAP

100.   The current Missouri Congressional District Map provides 97 out of 115 Missouri county-level governments (including the City of Saint Louis) are redistricted in a completely constitutionally compact matter, as relates to Missouri county jurisdictions only being represented by the same congressional representative.

101.   The Plaintiff's suggested Missouri congressional redistricting map provides 99 out of 115 Missouri county-level governments (including the City of Saint Louis) are redistricted in a completely constitutionally compact matter, as relates to Missouri county jurisdictions only being represented by the same congressional representative.

102.   The Plaintiff's suggested Missouri congressional redistricting map seeks to reduce the number of Missouri counties split between two or more congressional districts from 8 Missouri county-level governments upon the current Missouri Congressional District MAP to 6 Missouri county-level governments upon the Plaintiff's suggested Missouri congressional redistricting map.

103.   The current Missouri Congressional District Map provides for a county population split between two or more Missouri congressional districts from the following Missouri counties:

f.      429,322 Saint Louis County citizens are currently redistricted to Missouri Congressional District One from the majority of Saint Louis County residents represented by Missouri Congressional District Two.

g.      134,878 Saint Charles County citizens are currently redistricted to

Missouri Congressional District Two from the majority of Saint Charles County

residents represented by Missouri Congressional District Three.

h.      104,600 Jefferson County citizens are currently redistricted to

Missouri Congressional District Two and Missouri Congressional District Eight

from the majority of Jefferson County residents represented by Missouri

Congressional District Three.

i.      79,518 Jackson County citizens are currently redistricted to Missouri

Congressional District Six from the majority of Jackson County residents

represented by Missouri Congressional District Five.

j.      73,731 Clay County citizens are currently redistricted to Missouri

Congressional District Five from the majority of Clay County residents

represented by Missouri Congressional District Six.

k.      17,280 Camden County citizens are currently redistricted to

Missouri Congressional District Four from the majority of Camden County

residents represented by Missouri Congressional District Three.

l.      8,174 Webster County citizens are currently redistricted to Missouri

Congressional District Seven from the majority of Webster County residents

represented by Missouri Congressional District Four; and

    m.    6,325 Audrain County citizens are currently redistricted to Missouri Congressional District Six from the majority of Audrain County residents represented by Missouri Congressional District Four.

104.   The Plaintiff's suggested Missouri congressional redistricting map provides for a county population split between no more than two Missouri congressional districts from the following Missouri counties:

    n.    250,338 Saint Louis County citizens redistricted to Missouri Congressional District One from the majority of Saint Louis County residents represented by Missouri Congressional District Two.

    o.    39,749 Jefferson County citizens redistricted to Missouri Congressional District Eight from the majority of Jefferson County residents represented by Missouri Congressional District One;

    p.    3,548 Pulaski County citizens redistricted to Missouri Congressional District Eight from the majority of Pulaski County residents represented by Missouri Congressional District Four;

    q.    2,890 Polk County citizens redistricted to Missouri Congressional District Seven from the majority of Polk County residents represented by Missouri Congressional District Four;

    r.    1,631 Jackson County citizens redistricted to Missouri Congressional District Six from the majority of Jackson County residents represented by Missouri Congressional District Five;

s. 349 Boone County redistricted to Missouri Congressional District Three from the majority of Boone County residents represented by Missouri Congressional District Four; and

t. 43 Boone County citizens redistricted to Missouri Congressional District Six from the majority of Boone County residents represented by Missouri Congressional District Four.

105. The Plaintiff's suggested Missouri congressional redistricting map seeks to substantially reduce the Missouri county population split between two or more congressional districts from 853,828 Missouri citizens upon the current Missouri Congressional District Map to 298,548 Missouri citizens upon the Plaintiff's suggested Missouri congressional redistricting map.

106. The Plaintiff's suggested Missouri congressional redistricting map will substantially reduce the Missouri county population split between two or more congressional districts in violation of "as compact as may be" provision of Mo. Const. art. Ill, 45, by 555,280 State of Missouri citizens.

107. Based upon the population equality doctrine, Saint Louis County must be divided into at least two separate congressional districts based upon Saint Louis County's approximate population of one million citizens exceeding the 748,616 population of any Missouri Congressional District, which mathematically and constitutionally mandates any Missouri congressional redistricting plan to separate a minimum of 250,338 Saint Louis County citizens to another congressional district.

108.   Separating Saint Louis County's approximate population of one million citizens when the current population of any Missouri Congressional District is substantially less than the total population of Saint Louis County does NOT violate any compact doctrine principle due to such division of Saint Louis County total population into two congressional districts being mathematically required to comply with the population equality doctrine.

109.   The Plaintiff's suggested Missouri congressional redistricting map seek to minimize violations of the compactness doctrine by establishing Missouri Congressional District Two in a manner that creates a Missouri congressional district that is solely comprised of Saint Louis County citizens due to Saint Louis County's total approximate population of one million citizens substantially exceeding the 748,616 population of any current Missouri Congressional District, as relates to Missouri county jurisdictions only being represented by the same congressional representative.

110.   By decreasing the amount of Saint Louis County citizens split from a single congressional district from 429,322 Saint Louis County citizens upon the current Missouri Congressional District Map to 250,338 Saint Louis County citizens upon the Plaintiff's suggested Missouri congressional redistricting map will cause an additional 178,984 Saint Louis County citizens to be represented by completely compact Missouri congressional boundaries in comparison to the current Missouri Congressional District Map.

111.   The Plaintiff's suggested Missouri congressional redistricting map reduces the amount of Saint Louis County congressional voter bloc split to 250,338 Saint Louis

County citizens, which is the lowest reduction of Saint Louis County congressional voter bloc split from the current Missouri Congressional District Two or a congressional district solely comprised of Saint Louis County citizens mathematically possible.

112.   The Plaintiff's suggested Missouri congressional redistricting map seek to minimize violations of the compactness doctrine by establishing Missouri Congressional District Three in a manner that creates a Missouri congressional district that is solely comprised of Saint Charles County citizens, as relates to Missouri county jurisdictions only being represented by the same congressional representative.  By decreasing the amount of Saint Charles County citizens split from a single congressional district from 134,878 Saint Charles County citizens upon the current Missouri Congressional District Map to zero Saint Charles County citizens upon the Plaintiff's suggested Missouri congressional redistricting map, which will cause an additional 134,878 Saint Charles County citizens to be represented by completely compact Missouri congressional boundaries in comparison to the current Missouri Congressional District Map.

113.   The Plaintiff's suggested Missouri congressional redistricting map seeks to address violations of the compactness doctrine by not adjoining Saint Charles County congressional district boundaries with Saint Louis County because each county's boundaries are not "composed of contiguous territory" due to the Missouri River separating Saint Charles County and Saint Louis County.

114.   The Plaintiff's suggested Missouri congressional redistricting map seek to minimize violations of the compactness doctrine by establishing Missouri Congressional

District Five in a manner that creates a Missouri congressional district that is almost solely comprised of Jackson County citizens, as relates to Missouri county jurisdictions only being represented by the same congressional representative. By decreasing the amount of Jackson County citizens split from a single congressional district from 79,518 Jackson County citizens upon the current Missouri Congressional District Map to 1,631 Jackson County citizens upon the Plaintiff's suggested Missouri congressional redistricting map, which will cause an additional 77,887 Jackson County citizens to be represented by completely compact Missouri congressional boundaries in comparison to the current Missouri Congressional District Map.

115. The Plaintiff's suggested Missouri congressional redistricting map seek to minimize violations of the compactness doctrine by establishing Missouri Congressional District Six in a manner that creates a Missouri congressional district that represents all Clay County citizens, as relates to Missouri county jurisdictions only being represented by the same congressional representative. By decreasing the amount of Clay County citizens split from a single congressional district from 73,731 Clay County citizens upon the current Missouri Congressional District Map to zero Clay County citizens upon the Plaintiff's suggested Missouri congressional redistricting map will cause an additional 73,731 Clay County citizens to be represented by completely compact Missouri congressional boundaries in comparison to the current Missouri Congressional District Map.

116. The Plaintiff's suggested Missouri congressional redistricting map seek to minimize violations of the compactness doctrine by establishing Missouri Congressional

District One in a manner that creates a Missouri congressional district that cures the

current Missouri Congressional District Map splitting Jefferson County into three

separate Missouri Congressional Districts and provides a substantial majority of

Jefferson County citizens will be represented by one congressional district, as relates to

Missouri county jurisdictions only being represented by the same congressional

representative.  By decreasing the amount of Jefferson County citizens split from a

single congressional district from 104,600 Jefferson County citizens upon the current

Missouri Congressional District Map to 39,749 Jefferson County citizens upon the

Plaintiff's suggested Missouri congressional redistricting map will cause an additional

64,851 Jefferson County citizens to be represented by completely compact Missouri

congressional boundaries in comparison to the current Missouri Congressional District

Map.

117.    Based upon the population density of Saint Louis County, Saint Charles

County, the City of Saint Louis, Jefferson County and Franklin County, as compared to

the population density of the rest of the State of Missouri, Missouri congressional

redistricting process mathematically requires a substantial county population split from a

county surrounding the Saint Louis Metro region to conform with the population

equality and contiguousness doctrines associated with congressional redistricting of

Eastern Missouri citizens.

118.    The Plaintiff's suggested Missouri congressional redistricting map seek to

minimize violations of the compactness doctrine by establishing Missouri Congressional

District Four in a manner that creates a Missouri congressional district that represents all

Camden County citizens, as relates to Missouri county jurisdictions only being represented by the same congressional representative. By decreasing the amount of Camden County citizens split from a single congressional district from 17,280 Camden County citizens upon the current Missouri Congressional District Map to zero Camden County citizens upon the Plaintiff's suggested Missouri congressional redistricting map will cause an additional 17,280 Camden County citizens to be represented by completely compact Missouri congressional boundaries in comparison to the current Missouri Congressional District Map.

119. The Plaintiff's suggested Missouri congressional redistricting map seek to minimize violations of the compactness doctrine by establishing Missouri Congressional District Eight in a manner that creates a Missouri congressional district that represents all Webster County citizens, as relates to Missouri county jurisdictions only being represented by the same congressional representative. By decreasing the amount of Webster County citizens split from a single congressional district from 8,174 Webster County citizens upon the current Missouri Congressional District Map to zero Clay County citizens upon the Plaintiff's suggested Missouri congressional redistricting map will cause an additional 8,174 Webster County citizens to be represented by completely compact Missouri congressional boundaries in comparison to the current Missouri Congressional District Map.

120. The Plaintiff's suggested Missouri congressional redistricting map seek to minimize violations of the compactness doctrine by establishing Missouri Congressional District Four in a manner that creates a Missouri congressional district that represents all

Audrain County citizens, as relates to Missouri county jurisdictions only being

represented by the same congressional representative. By decreasing the amount of

Audrain County citizens split from a single congressional district from 6,325 Audrain

County citizens upon the current Missouri Congressional District Map to zero Audrain

County citizens upon the Plaintiff's suggested Missouri congressional redistricting map

will cause an additional 6,325 Audrain County citizens to be represented by completely

compact Missouri congressional boundaries in comparison to the current Missouri

Congressional District Map.

121.    The Plaintiff's suggested Missouri congressional redistricting map seeks to

address violations of the compactness doctrine by establishing Missouri Congressional

District Two, MO CD Three, MO CD Six, MO CD Seven and MO CD Eight as

completely compact or constitutionally compact congressional districts, as relates to

Missouri county jurisdictions only being represented by the same congressional

representative. Out of 3,743,080 Missouri Congressional District Two, MO CD Three,

MO CD Six, MO CD Seven and MO CD Eight citizens, the Plaintiff's suggested

Missouri congressional redistricting map provides completely compact or

constitutionally compact congressional districts to all 3,743,080 citizens of Missouri

Congressional District Two, MO CD Three, MO CD Six, MO CD Seven and MO CD

Eight (each aforementioned statistic accounting excludes 250,338 Saint Louis County

population constitutional and mathematically required to be split from Saint Louis

County, in the manner specified in paragraph 108 of this petition.)

122. The Plaintiff's suggested Missouri congressional redistricting map seeks to minimizing any necessary violations of the compactness doctrine due to the population equality constitutional requirement upon congressional redistricting process by establishing Missouri Congressional District One in a manner that limits the displacement of Missouri Congressional District One population from county jurisdictions otherwise represented by Missouri Congressional District One. Out of 748,616 Missouri Congressional District One citizens, the Plaintiff's suggested Missouri congressional redistricting map limits the displacement of Missouri Congressional District One population from county jurisdictions otherwise represented by Missouri Congressional District One to 39,749 Missouri Congressional District One citizens, or 05.30% of the entire Missouri Congressional District One population.

123. The Plaintiff's suggested Missouri congressional redistricting map seeks to minimizing any necessary violations of the compactness doctrine due to the population equality constitutional requirement upon congressional redistricting process by establishing Missouri Congressional District Four in a manner that limits the displacement of Missouri Congressional District Four population from county jurisdictions otherwise represented by Missouri Congressional District Four. Out of 748,616 Missouri Congressional District Four citizens, the Plaintiff's suggested Missouri congressional redistricting map limits the displacement of Missouri Congressional District Four population from county jurisdictions otherwise represented by Missouri Congressional District Four to 6,829 Missouri Congressional District Four citizens, or only 00.91% of the entire Missouri Congressional District Four population.

124.   The Plaintiff's suggested Missouri congressional redistricting map seeks to minimizing any necessary violations of the compactness doctrine due to the population equality constitutional requirement upon congressional redistricting process by establishing Missouri Congressional District Five in a manner that limits the displacement of Missouri Congressional District Five population from county jurisdictions otherwise represented by Missouri Congressional District Five.  Out of 748,616 Missouri Congressional District Five citizens, the Plaintiff's suggested Missouri congressional redistricting map limits the displacement of Missouri Congressional District Five population from county jurisdictions otherwise represented by Missouri Congressional District Five to 1,631 Missouri Congressional District Five citizens, or only 00.21% of the entire Missouri Congressional District Five population.

125.   The Plaintiff's suggested Missouri congressional redistricting map seeks to minimizing any necessary violations of the compactness doctrine due to the population equality constitutional requirement upon congressional redistricting process by establishing all eight Missouri Congressional Districts in a manner that limits the displacement of any Missouri Congressional District population from county jurisdictions otherwise represented by such Missouri Congressional District.  Out of 5,988,928 total Missouri Congressional District citizens, the Plaintiff's suggested Missouri congressional redistricting map limits the displacement of Missouri Congressional District population from county jurisdictions represented by another Missouri Congressional District to 48,210 total Missouri Congressional District citizens, or only 0.8% of the entire Missouri Congressional District population, compared to

603,490 total Missouri Congressional District citizens currently split from county jurisdictions represented by another Missouri congressional district upon the current Missouri Congressional District Map, or 10.07% of the entire State of Missouri's congressional district population (each aforementioned statistic accounting excludes 250,338 Saint Louis County population constitutional and mathematically required to be split from Saint Louis County, in the manner specified in paragraph 108 of this petition.)

126.   The Plaintiff's suggested Missouri congressional redistricting map does not utilize the race of any Missouri citizen to determine any congressional boundaries upon such suggested Missouri congressional redistricting map.

## CONCLUSION

127.   The State of Missouri has established the current boundaries of Missouri Congressional District One and Missouri Congressional District Two as an unconstitutional racial gerrymander, without absolutely any evidence or legal authority to establish any Missouri congressional district based upon race.

128.   The State of Missouri violated multiple constitutional redistricting principles in the name of complying with the Voter Rights Act of 1965, which the State of Missouri was without any evidence or cause to do such.

129.   As stated in *Bush v. Vera*: "Those practices and our precedents, which acknowledge voters as more than mere racial statistics, play an important role in defining the political identity of the American voter. Our Fourteenth Amendment jurisprudence evinces a commitment to eliminate unnecessary and excessive

governmental use and reinforcement of racial stereotypes. See, *e. g., Georgia* v.

*McCollum,* 505 U. S. 42, 59 (1992) ("[T]he exercise of a peremptory challenge must not

be based on either the race of the juror or the racial stereotypes held by the

party"); *Edmonson* v. *Leesville Concrete Co.,* 500 U. S. 614, 630-631 (1991) ("If our

society is to continue to progress as a multiracial democracy, it must recognize that the

automatic invocation of race stereotypes retards that progress and causes continued hurt

and injury"); *Powers,* 499 U. S., at 410 ("We may not accept as a defense to racial

discrimination the very stereotype the law condemns"); *Holland* v. *Illinois,* 493 U. S.

474, 484, n. 2 (1990) ("[A] prosecutor's 'assumption that a black juror may be presumed

to be partial simply because he is black' ... violates the Equal Protection

Clause"); *Batson* v. *Kentucky,* 476 U. S. 79, 104 (1986) ("[T]he Equal Protection Clause

prohibits a State from taking any action based on crude, inaccurate racial stereotypes").

We decline to retreat from that commitment today."

130. The Plaintiff vigorously contends that the Voter Rights Act of 1965 should

remain in force, as such, this Petition does NOT seek to invalidate the Voter Rights Act

of 1965 in any form or manner. The Defendant's response to the Plaintiff's Petition will

obviously be depended upon the Voter Rights Act of 1965 remaining in force. In unison

with Supreme Court case law, the Plaintiff relates the principle that the Voter Rights Act

of 1965 should only be utilized as a "sword" to permit minority populations the ability to

assault discriminatory behavior that is occurring at the "ballot-box", and not as a

"shield" to permit the State of Missouri to preordain regions by racial makeup where

discrimination might occur solely based upon the presence of a Minority population,

while also assuming such Minority population's Caucasian neighbors won't support the same candidates as such Minority population; Or worse, to permit the same racial discrimination that the Voter Rights Act of 1965 was authorized to cure in the first place to occur in the name of civil rights justice.

131.   The Plaintiff will not retreat from our Nation's respect for the United States Constitution.  Crony congressional redistricting deals cut by sitting congressional politicians, purported by the State of Missouri as a necessity (in the instant matter) to support civil rights justice, presents a disgusting disrespect for each man, woman, child and solider who bled or died fighting to secure civil and suffrage rights on behalf of our all United States citizens.  Shame on any and all who unconstitutionally utilized the Voter Rights Act of 1965 for political maneuvering of Missouri congressional boundaries, and not for the constitutional purpose of justly protecting ballot access on behalf of the State of Missouri's African American community.

132.   Currently, over half of a million Missouri citizens are represented by unconstitutional non-compact congressional districts, purported in the name of providing Missourians voter rights justice.  As a matter of law, the current Missouri Congressional District Map must be invalided by this Honorable Court.  The Missouri General Assembly retains no legal authority to redraw the current Missouri Congressional District Map to conform with this Court's potential ruling in this matter.  As such, the Plaintiff respectfully request this Court utilize all available remedies to immediately begin redrawing the Missouri Congressional District Map for the 2016 Missouri primary election to comply with Mo. Const. art. Ill, 45, posthaste.

## COUNT I
### (Violation of the Equal Protection Clause of the United States Constitution)

133.  Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-132 above.

134.  The Fourteenth Amendment of Section 1 of the United States Constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

135.  Race was the predominant factor in the creation of Missouri Congressional District One, Missouri Congressional District Two and the entire Missouri Congressional District Map.

136.  The use of race as the predominant factor with respect to the creation of current Missouri Congressional District One, Missouri Congressional District Two and the entire Missouri Congressional District Map is not narrowly tailored to serve a compelling state interest.

137.  Accordingly, Missouri Congressional District One, Missouri Congressional District Two and the entire Missouri Congressional District Map each violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

138.  Plaintiff has no adequate remedy at law other than the judicial relief sought here. The failure to temporarily and permanently enjoin the conduct of elections based on the current boundaries of Missouri Congressional District One, Missouri

41

Congressional District Two and the entire Missouri Congressional District Map will
irreparably harm the Plaintiff and all similarly situation Missourians by violating their
constitutional rights.

## COUNT II
### (Violation of the Missouri Constitution, art. III, 45)

139.   Plaintiffs reallege and incorporate by reference, as if fully set forth herein,
the allegations in paragraphs 1-138 above.

140.   Article III, Section 45, of the Missouri Constitution provides: "When the
number of representatives to which the state is entitled in the House of the Congress of
the United States under the census of 1950 and each census thereafter is certified to the
governor, the general assembly shall by law divide the state into districts corresponding
with the number of representatives to which it is entitled, which districts shall be
composed of contiguous territory as compact and as nearly equal in population as may
be."

141.   Race was the predominant factor in the creation of Missouri Congressional
District One, Missouri Congressional District Two and the entire Missouri
Congressional District Map.

142.   The State of Missouri utilizing race as the predominant factor in the
creation of Missouri Congressional District One, Missouri Congressional District Two
and the entire Missouri Congressional District Map is a violation of the Equal Protection
Clause of the Fourteenth Amendment to the United States Constitution.

143. Missouri Congressional District One, Missouri Congressional District Two, Missouri Congressional District Three and the entire Missouri Congressional District Map were established NOT "as compact as may be" based upon the State of Missouri utilizing race as the predominant factor in the creation of Missouri Congressional District One, Missouri Congressional District Two and the entire Missouri Congressional District Map.

144. Over half of a million Missouri citizens are unnecessarily represented by non-compact congressional boundaries, based upon the State of Missouri utilizing race as the predominant factor in the creation of Missouri Congressional District One, Missouri Congressional District Two and the entire Missouri Congressional District Map.

145. The use of race as the predominant factor with respect to the creation of current Missouri Congressional District One, Missouri Congressional District Two and the entire Missouri Congressional District Map is not narrowly tailored to serve a compelling state interest.

146. Accordingly, Missouri Congressional District One, Missouri Congressional District Two, Missouri Congressional District Three and the entire Missouri Congressional District Map each violate Article III, Section 45, of the Missouri Constitution.

147. Plaintiff has no adequate remedy at law other than the judicial relief sought here. The failure to temporarily and permanently enjoin the conduct of elections based

on the current boundaries of Missouri Congressional District One, Missouri

Congressional District Two, Missouri Congressional District Three and the entire

Missouri Congressional District Map will irreparably harm the Plaintiff and all similarly

situation Missourians by violating their constitutional rights.

## COUNT III
### (Violation of the Voter Rights Act of 1965)

148.   Plaintiffs reallege and incorporate by reference, as if fully set forth herein,

the allegations in paragraphs 1-148 above.

149.   The Voter Rights Act of 1965 provides: "No voting qualification or

prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by

any State or political subdivision to deny or abridge the right of any citizen of the United

States to vote on account of race or color."

150.   Race was the predominant factor in the creation of Missouri Congressional

District One and Missouri Congressional District Two.

151.   The State of Missouri unnecessarily utilizing race as the predominant factor

in the creation of Missouri Congressional District One and Missouri Congressional

District Two is a violation of the Equal Protection Clause of the Fourteenth Amendment

to the United States Constitution.

152.   In violation of Article III, Section 45, of the Missouri Constitution, the

State of Missouri unnecessarily established Missouri Congressional District Two in a

manner that excluded virtually the entire Saint Louis County African American

population from Missouri Congressional District Two, the Missouri congressional

district that represents the majority of Saint Louis County citizens, in favor of Missouri Congressional District Two representing the exact amount of Saint Charles County and Jefferson County citizens.

153. The State of Missouri unnecessarily establishing Missouri Congressional District Two in a manner that excludes virtually the entire Saint Louis County African American population from Missouri Congressional District Two, in favor of Missouri Congressional District Two representing the exact amount of Saint Charles County and Jefferson County citizens without a compelling state interest is a violation of Section 2, of the Voter Rights Act of 1965.

154. The use of race as the predominant factor with respect to the creation of current Missouri Congressional District Two boundaries is not narrowly tailored to serve a compelling state interest.

155. Accordingly, Missouri Congressional District Two is in violation of the Voter Rights Act of 1965.

156. Plaintiff has no adequate remedy at law other than the judicial relief sought here. The failure to temporarily and permanently enjoin the conduct of elections based on the current boundaries of Missouri Congressional District One, Missouri Congressional District Two and the entire Missouri Congressional District Map will irreparably harm the Plaintiff and all similarly situation Missourians by violating their constitutional rights.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff request that this Court:

1. Convene a one-court judge to issue an ex-parte temporary restraining order pursuant to RULE 65 enjoining the Defendants from enforcing or giving any effect to the boundaries of Missouri Congressional District One, Missouri Congressional District Two, Missouri Congressional District Three and any other current Missouri Congressional District established from the 2011 Missouri congressional redistricting process, including a temporary restraining order barring the Defendants from conducting any elections for the United States House of Representatives based on the current boundaries Missouri Congressional District One, Missouri Congressional District Two, Missouri Congressional District Three, or any other Missouri Congressional District;

2. Convene a court of three judges pursuant to 28 U.S.C. § 2284(a);

3. Issue a preliminary injunction enjoining the Defendants from enforcing or giving any effect to the boundaries of Missouri Congressional District One, Missouri Congressional District Two, Missouri Congressional District Three and any other current Missouri Congressional District established from the 2011 Missouri congressional redistricting process, including a preliminary injunction barring the Defendants from conducting any elections for the United States House of Representatives based on the current boundaries Missouri Congressional District One, Missouri Congressional District Two, Missouri Congressional District Three, or any other Missouri Congressional District;

4.      Declare the current boundaries of Missouri Congressional District One and Missouri Congressional District Two established from the 2011 Missouri congressional redistricting process each constitute racial gerrymanders in violation of the Equal Protection Clause of the Fourteenth Amendment;

5.      Declare each Missouri Congressional District established from the Missouri Congressional District Map violate "as compact as may be" provision of Article III, Section 45, of the Missouri Constitution;

6.      Declare the separation of the Saint Louis County African American population from the current boundaries of Missouri Congressional District Two established from the 2011 Missouri congressional redistricting process constitute a violation of the Voter Rights Act of 1965;

7.      Issue a permanent injunction enjoining the Defendants from enforcing or giving any effect to the boundaries of Missouri Congressional District One, Missouri Congressional District Two, Missouri Congressional District Three and any other current Missouri Congressional District established from the 2011 Missouri congressional redistricting process, including a permanent injunction barring the Defendants from conducting any elections for the United States House of Representatives based on the current boundaries Missouri Congressional District One, Missouri Congressional District Two, Missouri Congressional District Three, or any other Missouri Congressional District;

8.    Invalidate the current Missouri Congressional District Map and draft a new congressional district map on behalf of the State of Missouri; and

9.    Grant such other or further relief the Court deems to be appropriate, including but not limited to an award of Plaintiffs' attorneys' fees and reasonable costs.


Respectfully submitted, upon the 12th day of April, 2016.

**Paul Berry III**
Petitioner Pro se

10997 Whitehall Manor Drive
Bridgeton, MO 63044
UREWorldwide@gmail.com
Telephone: 314-755-9252

# EXHIBIT

# A